## TYLER and others *v.* CRANE.

*(Circuit Court, D. New Jersey.* December 17, 1880.)

1. RE-ISSUE No. 6,609—HARVESTING MACHINE—VALIDITY.

Re-issued letters patent No. 6,609, granted Samuel W. Tyler, August 24, 1875, for improvements in harvesting machines, *held, valid* as to the *third* and *fourth* claims.

2. PATENT—INFRINGEMENT—ANTICIPATION—FIRST INVENTOR.

In a suit for infringement the patent act allows as a defence anticipation by other letters patent or by a printed publication; and when the former is pleaded the complainant may show, if he can, that the date of the actual invention was older than the date of the contesting patent; but no emphasis is laid upon the inquiry into the time when the inventor of the alleged prior patent made his invention.

3. SAME—LONG-UNQUESTIONED VALIDITY—EXTENSION—RE-ISSUE—VALIDITY.

The long-unquestioned validity of a patent, its extension, and re-issue, all make a strong *prima facie* case for sustaining such patent.

4. SAME—UTILITY.

The incorporation by the defendant in his machine of the complainant's invention is an evidence of utility.

5. SAME—INFRINGEMENT—MODIFIED APPLICATION NO DEFENCE.

The defendant cannot relieve himself from the charge of infringement by directly and not mediately attaching complainant's invention to his machine.

Complainant's invention, consisting of a rigid support or frame, cast or formed in one piece, attached to the axle of a harvesting machine upon which the gearing and shafts which communicate motion from the main gear-wheels, or driving wheels and axle, to the cutter, are borne, and bearing upon a rectangular wooden frame acting as a medium of support between such frame and the axle, *held, infringed* by a device in which the rectangular frame is dispensed with, and such support directly attached to the axle.

In Equity.

*Seward & Dodge,* for complainants.

*Thurston, Woods & Adams,* for defendant.

NIXON, D. J. This is a suit for the infringement of extended and re-issued letters patent numbered 6,609, and dated August 24, 1875. The original letters patent, granted to Samuel W. Tyler, one of the complainants, are numbered 30,651, and dated November 13, 1860.

The bill alleges that the defendant has infringed the third and fourth claims of the complainants' patent, which are as follows: "(3.) In a two-wheel harvesting machine, having an axle connecting the wheels, a support for the driving mechanism of the cutters, made in one piece, the weight of which, and that of the driving mechanism, being arranged between the main wheels and sustained by the axle thereof, substantially as described and for the purposes set forth. (4.) The piece, D, which supports the intermediate shafts and gearwheels, constructed substantially as described, to form a shield from the under side to the crank-shaft, e, substantially as specified."

The answer of the defendant admits that he has made sale within the jurisdiction of the court of divers harvesters, which were manufactured and consigned to him for sale by the Sprague Mowing Machine Company, a foreign corporation, but claims that the said machines were lawfully constructed under divers letters patent owned by the company, or under which the said company was licensed.

The defences relied upon at the hearing were two: (1) That complainants' patent was void for want of novelty; (2) that the defendant's machine did not infringe.

1. What is the complainants' invention, or at least that portion of it which it is claimed the defendant infringes?

It relates to improvements in harvesters. The evils or defects of the existing machines, that he endeavored to guard against and remedy, arose from the wooden frames, and the liability of the "gears and their shaft journals to become cramped and bound in their action by springing, warping, or wringing of the frame." To prevent this, he provides that all the gearing and shafts which communicate motion from the main gear-wheels or driving-wheels and axle thereof to the cutter, shall be borne on a rigid common support or frame, cast or formed in one piece, which consisted of a cast-iron

support, D, formed in one piece; and that portion of the said support, D, between the pinion and pitman-crank is hollowed out to receive the shaft, e, or is made convex on one side and concave on the other, with a horizontal projection on each side of the concavity, in order not only to give strength to the frame with a small amount of material, but also to afford a shield to prevent the grass or grain from underneath winding around the shaft and clogging it.

At the date of the complainants' invention the evidence shows that there were two kinds of harvesters or mowers in use: one having two driving or traction-wheels to aid in communicating motion to the cutting apparatus, and the other only one; the additional wheel in the last-recited machine acting simply as a support to keep the frame in an upright position. Tyler took the existing two-wheel machine, and aimed to correct the practical defects of twisting and warping by placing the gearing and shafts that impart the motion to the cutter upon a rigid common support or frame, formed in one piece, as above stated.

The defendant says that this does not constitute invention; that the two-wheeled machine was old, as is shown in the Aultman & Miller patent, (defendant's Exhibit A;) that the solid piece, acting as a support for the driving mechanism, was applied by Russell to a one-wheel machine, before the date of Tyler's invention, (defendant's Exhibit C,) and that their combination in a single machine exhibits mechanical skill only, and is not the subject of a patent.

The counsel for the complainants endeavor to meet this objection in two ways, either of which, if successful, is a complete answer. They insist (1) that although the Russell patent antedates the complainants', Tyler was in fact the original and first inventor of the mechanism, which, it is alleged, he took from the Russell machine. But, if the testimony fails to satisfy the court that Tyler's invention was older than the Russell patent, then (2) they claim that a new and useful result has been produced by the combination of old instrumentalities, and that, whilst the result is not patentable, the combination is which secures it.

With regard to the first point, I am inclined to think that

the weight of the testimony sustains the complainants' contention. It will be observed that this is not a contest between Tyler & Russell as to which first made the invention, although it would seem from the drift of the defendant's evidence that such was his impression.

In a suit for infringement the patent act allows, as a defence, anticipation by other letters patent, or by a printed publication; and when the former is set up the complainant is permitted to show, if he can, that the date of the actual invention was older than the date of the contesting patent; but no emphasis is laid upon the inquiry into the time when the inventor of the alleged prior patent first made his invention. The date of the Russell patent is October 12, 1858. What evidence has been adduced to show that Tyler's invention was prior?

William H. Tolhurst, an experimental machinist, model and pattern maker, says that in the first part of the year 1858 he built patterns for a full-sized harvesting machine for Mr. Tyler from drawings that had been made in 1857; that early in 1859 he constructed a model from these patterns—the model patterns and drawings all containing the solid frame on which the intermediate gearing between the driving-wheels and cutting apparatus is mounted—and which is the device that the defendant charges Tyler with incorporating into his machine from Russell's patent. The witness testifies that he has no interest in the pending controversy, and his testimony is as clear and reasonably definite as could be expected from one who is speaking of transactions which took place 20 years before. He is substantially confirmed in these dates by other witnesses for the complainants, to-wit: Moorse, Marsh, McFarland, and Ross.

But, in addition to this defence of a prior patent, the defendant also sets up the patentee Russell as a person who had prior knowledge of the invention covered by the Tyler patent. What was the character and extent of his knowledge as shown by the evidence? Russell was called as a witness by the defendant. Having his attention called to his letters patent No. 21,777, granted October 12, 1858, and to the specifications, wherein they state: "A represents the

main frame of a mower. This frame is of cast metal, cast in a single piece," etc.,—and, being referred particularly to the solid frame, he is asked:

"*Question*. (4) When did you first conceive the invention? *Answer*. I made up my mind in the spring of 1857 that there had got to be a solid frame, and in June, 1857, that was the time we were cutting hay, and that was the time I made my calculations how I would make the frame; I mean the solid frame. What caused me to think more of it at that time was the trouble I found in the warping and twisting of the wooden frame I was using. I had several talks at that time about the arrangement of this frame.   *   *   *   I had sketches showing the form of my solid frame substantially as shown in the drawings of the Russell patent.

*   *   *   *   *   *   *

"*Question*. (8) When did you commence to manufacture or get ready to manufacture the machine you speak of having the solid frame? When did you have a machine completed having a solid frame, and when was the model made to be sent to the post-office? *Answer*. Well, I commenced to manufacture the full-sized machine in December, 1857. I cannot give the exact date when I had a machine completed. All I can say is, I had several machines completed during the winter, before the spring opened. I made a model like defendant's exhibit, 'Russell Mower,' immediately after that agreement was signed between me and Blake, Bernard & Co. (Date of agreement, August 5, 1857.) Then there was a second model made, cast from the same pattern, that was sent to Washington. That was made in the winter of 1857–8."

"*Question*. (10) Did you or not ever use one of your machines, having the solid frame, in the field, or do you know of such use by others? *Answer*. Well, I have used them, and I have known others to use them. The first haying season that they were in use was in 1858; I mean the first year that the solid frame was in use."

And, on cross-examination, he thinks it was in June, 1858, that the first machine was used on the farm of either Thomas Motley or Richard S. Fay. He took them there to see how

they worked. He does not know what became of the machines after that; thinks he may have sold two of them. But the drawings and machine, from which the model of the Tyler invention was constructed, were prior to this date. The former was made in 1857, and the latter in the early part of 1858, and both anticipated the public use of the Russell invention, if such public use could be held to be anything more than an experiment.

Such a view of the testimony, which accords to Tyler priority of invention of the solid frame, disposes of the question of lack of novelty, and relieves me from considering the other proposition of the complainants, that if all the elements of the combination are old, the patent, nevertheless, is sustainable upon the new and useful results which have followed the new combination.

But, under this head, it may be proper to observe that the long-unquestioned validity of the patent, its extension and re-issue, all make a strong *prima facie* case for the complainants; and when to these facts are added the utility of the combination, which the testimony discloses, and the acknowledged incorporation of the solid frame into the defendant's machine, in order to avoid or correct the defects of twisting or warping, which Tyler found in existing organizations at the time of his invention, it seems quite clear that the complainants' claim in this respect is not unwarrantable.

2. The only remaining question is that of infringement. The defendant's machine has two wheels, with an axle connecting the wheels. It contains the solid piece or frame, made of a single casting, for the support of the intermediate shaft and gearing, and is arranged between the main wheels, and is sustained by the axle. It differs from the mechanism of the complainants' only in dispensing with the use of the rectangular wooden frame, A A', B B', which the Tyler patent describes as a medium of support between the solid frame and the axle. Whether the machine is made more or less efficient in operation by the use or non-use of such a support is not an important inquiry. The defendant cannot relieve himself from the charge of infringement by directly,

and not mediately, attaching his solid piece to the axle of the wheels.

There must be a decree for the complainants, and a reference for an account, according to the prayer of the bill.